I have unmuted myself. Please, the court, you know, Lipkin on behalf of the petitioner. This matter comes from the Board of Immigration Appeals, I believe the seminal issue in the case is credibility. Petitioner contends that the IJ and then the board failed to properly consider the totality of the circumstances in reaching the adverse credibility finding. In particular, the alleged inconsistencies noted by the IJ were de minimis and completely rationally explained by the petitioner who recounted events that occurred when he was 10. He was about 18 at the time of the incident. I'm sorry, you said the inconsistencies were de minimis, but not across the board. There was one particularly egregious instance, wasn't there, that you don't really seem to address in your brief. Are you again trying to just sort of, you know, sidestep it? Which inconsistency is the court referring to? I thought that he basically, well, the inconsistency between what he told, was it the asylum officer? Am I remembering this, this correct, that he had siblings who were still there and who he had recently spoken with and this and that and then on cross examination said, Oh, well, actually, I don't even I've never even met those people. That just seemed to me. But you are correct that that inconsistency exists. However, and we addressed it in the brief, he plausibly explained that he was mistaken. And in fact, his recantation of whether his siblings were harmed by gang members was actually an attempt to minimize the harm, not to enhance it. This court has found on many occasions, as we said in the brief, that it is when an applicant tries to enhance the claim that an adverse credibility finding is justified. But here he reduced it. He said, No, I was mistaken to say that. Again, he was very young during the time of the asylum intervention. We don't know how the question was posed to him, and whether there were any difficulties on his part in understanding it when he replied back at the asylum office. In particular, one area in which I feel the IJ and then the board greatly mistook his of his testimony to support that adverse credibility finding was what happened at the hospital during his recount of the very traumatic and painful death of his grandmother. The board incorrectly and unfoundedly penalized the petitioner for mistaking whether he had spoken to his grandmother again before she had died or how many hours had gone by. It's just it's incredulous considering again his extremely young age at the time the harm occurred. Aside from that, the evidence strongly suggests that he did establish past persecution on account of several protected grounds. One was the family. There were various family members who were extorted, threatened, and several who were murdered for their failure to acquiesce to the demands of the gang. He gave testimony to a police officer. It is unknown to him whether that was then introduced in a court of law or not, but he credibly testified that some report is some written testimony of his was produced. And the fact of that is established when later a gang member, the one who shot his grandmother, confronted him and said he knew that the petitioner had given testimony. The agency was skeptical that the same gang that would have tried to kill him and did kill his grandmother would then try to recruit him. It seems like there's this like push and pull thing going on. Can you explain your response to that? Your Honor, I could not pretend to know the inner workings of the gang, but I think that logically make your enemy your friend makes sense. If he were to join the gang, he would then have to pledge loyalty to it and therefore could not continue with any testimony against it in a court of law or suffer consequences. That would be my only explanation. I think it's rational, but again, I couldn't pretend to know why the gang operates in the manner that it does. Ms. Lipman, can I ask you about something else? You filed a motion for mediation and to hold this case in abeyance. It's still pending. Did you ever discuss that with the government? We did, and Ms. Chapman was very courteous and responded to all my requests. It turns out that I believe the court has some policy that once a case has been assigned to a panel as it has, that judicial closure is no longer an option. If that were not the case, I still would love to pursue it, but I understand that that's not available to us. His request for prosecutorial discretion is pending with DHS currently. Would mediation in our court help at all? I'm not sure I understand your answer. Would you like us to order you to go to mediation? I'm not sure what the court's rules are in regards to whether judicial closure is still available. Don't worry about the rules. We'll take care of the rules. If the government would agree to judicial closure, then yes. On behalf of the petitioner, I would like to place the matter in mediation. How about agency discretion, prosecutorial discretion? Yes, either one. Okay, all right. Would you like to save the rest of the time for rebuttal? Yes, thank you. All right, let's hear from the government. Okay, can you hear me? Yes. Good afternoon. My name is Elizabeth Chapman, and I represent the immigration judge. The immigration judge determined that the petitioner did not meet his burden of proof demonstrating his credibility, and the judge pointed to specific and cogent examples from the record to support that. And the most salient of those, of course, is his admitted lies under oath before the asylum officer and before his attorney and his father. They were both there. Before the asylum officer, he fabricated a claim about his brother and sister, Melanie and Jordan. He fabricated a relationship about them, or a relationship with them. He said that the gangs had threatened them and said that if they didn't join the gang, then the gang would kill him. They said that if the gang had threatened him and said that if he didn't join the gang, the gang would kill them. He further said that just a month before his hearing, before the asylum office, he had spoken with them. They said that the gang had come by, had brandished a weapon, and had been asking about him. So, all of these are just fabrications that he had made in what appears to be an attempt to bolster his claim. And he admitted during his hearing before the immigration court that these were not true, that he just made this up because he was nervous. He said, well, I was nervous. I didn't know what to answer. I said that because I was nervous. In fact, I've never had any contact with them. He doesn't know them. He says he's never met them. So, of course, none of that is true. That would be the strongest point supporting the agency's adverse credibility finding. And then in addition to that, the immigration judge pointed to other inconsistencies and implausibilities in the record. The judge questioned this claim that the gang was out to kill him if over the period of six years, they had encountered him several times in front of his church, at the soccer field, on a bus, and that they kept saying they were going to kill him, but then they never made any actions to harm him. So, the judge properly looked at the totality of the circumstances, most saliently the fabrications that he made in front of the asylum officer. And then in addition, the impossibility and other inconsistencies and said the record as a whole under the totality of circumstances shows that he didn't testify credibly. And there's nothing that compels reversal of that. Well, what if we did, what if we agreed with you that the first ground was supported, but that none of the other grounds offered by the agency were supported? What then? I suppose you'd have to see whether his admission to lying under oath before the asylum officer is sufficient to support the credibility finding. And we would apply... We would apply the totality of the circumstances under alim, or would we apply the rule that lying to an immigration officer is enough on its own always? No, I don't think it's enough on its own always. That would be implying that somebody could never rehabilitate their credibility. And I don't think that that's what the court's saying here. But in this particular case, he didn't rehabilitate his credibility. He didn't provide a reason. The reason was only that he was nervous. I think that everybody that goes in front of the asylum officer is nervous. As I understand it, we have a Sting versus Holder opinion from 2011 that would suggest that the lie to the immigration authorities about the siblings would probably be enough on its own. But then we have this en banc in alim. So are you agreeing that alim has superseded Sting? Alim has superseded Sting, being that lying under oath is not sufficient. Or it's not a per se rule saying that once you've lied to an immigration officer, that's enough to always be adverse credibility? I'm not saying that. I'm saying in this particular case, if it is possible to rehabilitate your credibility through independent evidence or through a rational explanation for your lies, for your misrepresentations and fabrications, the petitioner in this case just simply didn't do that. He didn't submit any independent evidence. Where is this rehabilitating your credibility concept coming from? Is that in Sting in your view? No, I'm just I'm just honestly answering the court's question that if you had asked whether it's a per se automatically, if you lie once, you can never then you're done. I'm saying that's not what this case is saying. With this case, just under the facts of this particular case, there's nothing to show that he did testify credibly. Could you clarify? I don't want to ask you to tell us what the discussions that you and the opposing counsel have had. But just on the mediation front, is it the government's position that no, we're not willing to mediate this case, that that would be fruitless or something else? No. What has been, as opposing counsel said, what has been my understanding is that this case, by the time that everything had been sorted out, as far as how we're exercising prosecutorial discretion, once a case has been assigned to a panel as this case had, judicial administrative closure was no longer an option. That's been the policy that I've understood. And that's, I think our office has understood. I've seen that with other cases that we're no longer able to judicially administratively close the case. And the option at that point is petitioner to approach DHS directly and ask for prosecutorial discretion. So that's why the main reason why this case was not even evaluated for judicial administrative closure is because I've been under the impression as our office has that it's not available. If that's not true. I'm confused about what that even means. So we definitely have cases that are assigned to our panels. And then we're told by the parties that the parties have agreed to discretion. At least I'm not sure. This is under the latest, under the latest round of prosecutorial discretion under the new administration. That's what has been the standing guidance is that once the case has been assigned to a panel, that's no longer an option for the court to exercise this policy of judicial administrative closure. That's not to say that prosecutorial discretion is not available, but it's available through DHS. And what's happening is that the petitioner's counsel approaches DHS directly, submits an application or a request for a case review for prosecutorial discretion. And so that's what opposing counsel said she has done. And that is still pending. But the way that in my experience, we've had cases go into mediation sometimes at the request of the parties, even after they've been assigned to a panel. So I guess I don't know if my experience is consistent with what you're saying, but would you like to go to mediation in our court? It depends what is supposed to be the result of mediation. If the result is supposed to be judicial administrative closure, it doesn't seem like that's available because of this policy. If what petitioner would be seeking through mediation is prosecutorial discretion through ICE, we could place the case in mediation to see what the result is of the request that she's already made. I don't know that a decision on the case by this court affects DHS's determination on whether or not PD is available. So the court could rule, the court could not rule. And I don't think that that affects DHS's view on PD. That's just the pending. But if the court thinks that it may, we could place the case in mediation to await a result. And if DHS agrees to exercise prosecutorial discretion here, then we would file a motion to remand the case. And if the DHS declines prosecutorial discretion, then the court would rule on this case. Does that answer your question? A lot of this might be different based on this policy that has come out under the new law. I just thought in the past, what I thought frequently happened was that prosecutorial discretion was discussed through the mediation process. In fact, I had never heard the term judicial administrative foreclosure until about six months ago when I saw a motion for judicial administrative foreclosure, which was something new. I don't think it actually existed until six months ago. That's something that has come about under the current administration. Some panels have been reluctant just to stay a case because what you're essentially asking for is that we put the case on the back burner and it just sits there forever. Exactly. And the court doesn't like to do that because we don't like, we like things to be tidied up and complete and done. So it's something, the Second Circuit has been doing this also. It's essentially just closing the case at the judicial level and either party, so petitioner's party or the government. Could reopen. At any time, reopen it. If the government decides to reopen it, they have to give the petitioner 21, I believe it's 21 days notice at least, so that they could file for a stay of removal. But if there's a stay of removal in place already, that stay of removal continues during this period of judicial administrative foreclosure. But I guess the underlying concern is, I don't know why prosecutorial discretion would not be or could not be discussed through our court's mediation service. I understand and that's because previously that is what was going on, is that it would be a discussion between the oil attorney and petitioner's counsel. I believe it's because of the quantity of cases under the new guidance for the new administration. The policy is that the oil attorney is not meddling in with the prosecutorial discretion requests. That's for the attorney's counsel to approach ICE directly. What the oil attorney can do is this administrative closure, the judicial administrative closure process. That's how the oil attorney is exercising PD. That's unique to the Ninth Circuit. In other circuits, it's the same, that it's petitioner's counsel is directly approaching ICE and we're just putting cases in advance. Okay. You had a few minutes. Counsel, you had a few minutes for a rebuttal or a minute. I just want to reiterate that the issue about false statements before the asylum officer were made when the petitioner was still a young boy. He was still well under the age of 18 and he did recant. This court has allowed recanting, especially on issues where there's not an enhancement, there is a minimization of the claim, as I had argued earlier. Thank you very much. Okay. Thank you very much. The matter is submitted at this time.
judges: PAEZ, WATFORD, FRIEDLAND